**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DENNIS STRUTTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:23-CV-1134 SPM |
| ) | |
| DENISE HACKER, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiffs Dennis Strutton and James Moller for leave to commence this civil action without prepayment of the required filing fee. [ECF No. 2]. The Court will deny the motion for leave to proceed in forma pauperis and instruct plaintiff Dennis Strutton to pay the full $402 filing fee.[1] Plaintiff James Moller will be severed and dismissed from this action pursuant to Federal Rule of Civil Procedure 21.[2] Additionally, for the reasons discussed below, the Court will give plaintiff Dennis Strutton, the lead plaintiff, the opportunity to file an amended complaint. Plaintiff's motion for class certification, ECF No. 3, will be denied.[3]

---

[1] The typed motion for leave to proceed in forma pauperis lacks financial information for Dennis Strutton. Therefore, the Court is unable to ascertain whether plaintiff Strutton can pay the full filing fee. As such, plaintiff Strutton's motion to proceed in forma pauperis must be denied, and he is responsible for paying the full $402 filing fee in this action.

[2] This Court does not permit multiple pro se plaintiffs to join together in a single lawsuit under Rule 20 of the Federal Rules of Civil Procedure. As such, plaintiff James Moller will be dismissed from this action given that plaintiff Dennis Strutton is the lead plaintiff.

[3] Under Federal Rule of Civil Procedure 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Additionally, a litigant may bring his own claims to federal court without counsel, but not the claims of others. *See* 28 U.S.C. § 1654; *see also* 7A Wright, Miller & Kane,

## The Complaint

Plaintiff Dennis Strutton,[4] a civil detainee currently housed at the Sexual Offender Rehabilitation and Treatment Services Center (SORTS) in Farmington, Missouri, brings this action pursuant to 42 U.S.C. § 1983. His complaint is typewritten and numbers twenty (20) pages. [ECF No. 1]. Plaintiff names the following as defendants in this action: Denise Hacker (Chief Operating Officer, SORTS); Christopher Chamberlain (Director of Security, SORTS); George Killian (Director of Treatment, SORTS); Stacy Giggs (Program Director, SORTS); Matthew Roach (Chief Financial Officer, SORTS). Plaintiff additionally claims that he is suing "Several Does of the Sex Offender Rehabilitation and Treatment Services Facility." Plaintiff sues defendants in their individual and official capacities.

Plaintiff Dennis Strutton alleges a plethora of claims against the five defendants in this lawsuit. Although he claims that he is asserting only eight claims in his complaint, each claim has multiple subparts and several claims number multiple pages in length.

In claim one, plaintiff asserts that his First Amendment rights to freedom of expression have been violated by defendants' limits on his access to speech and media. [ECF No. 1, pp. 4-5]. He alleges that this right has been violated by restricting his access to: (1) unrated DVDs; (2) videogames that are rated E/E10 (and no shooter games); (3) music that does not have "Explicit" or "Adult" ratings; (4) the internet or social media; and (5) an inability to learn or speak a language other than English. Although plaintiff fails to articulate exactly which defendant has violated his

---

*Federal Practice and Procedure: Civil 3d § 1769.1.* ("class representatives cannot appear pro se.").

[4]Because the Court is severing and dismissing plaintiff James Moller from this action, the Court will hereinafter refer to "plaintiff" as Dennis Strutton.

2

rights[5] and when these occurrences have happened, he states that defendants have possibly engaged in a civil conspiracy to restrict his First Amendment rights. Plaintiff similarly fails to indicate which defendant is responsible for this purported policy of First Amendment violations.

In claim two, ECF No. 1, p. 5, plaintiff claims that civil detainees at SORTS are only allowed to get a job when they reach the "green level" of treatment. Even then, they are paid below minimum wage for their work. Plaintiff believes this violates the "least restrictive environment" test and restricts detainees' access to "meaningful personal work opportunities."

In claim three, ECF No. 1, pp. 6-7, plaintiff contests the length of stay in SORTS and believes that it is unconstitutional. He asserts that since 2016 there have been very few releases from the program and often "rules are changed" without informing detainees until someone receives a Behavior Worksheet. Staff are taught to fear residents which makes them view residents as security threats and helps justify unlawful searches, targeting of detainees by staff, manipulation of rules by security, and targeting of detainees' personal property. Additionally, plaintiff alleges that the Annual Review of each detainee is nothing more than pro forma, done by cutting and pasting from the prior year's report. Last, plaintiff insists that "most of the residents in SORTS

---

[5]Liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); and *Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

custody are not violent sexual predators," and detainees are being kept unlawfully committed to charge against "future violence" which is unlawful. He asserts that the detainees need individualized treatment plans to facilitate individual assessment, less restrictions and release from the program.

In claim four, ECF No. 1, p. 8, plaintiff asserts that SORTS staff unlawfully are given too much leeway to interpret the rules at SORTS and to punish detainees by filling out Resident Worksheets. Plaintiff claims a violation of due process rights at SORTS, asserting that detainees are not allowed to submit evidence against staff if they are issued Worksheets by staff, call witnesses on their own behalf, or use video evidence. He claims that even if Worksheets are false, "staff are still considered credible even when there is evidence to the contrary." Further, anything the staff writes is used in the Annual Report against the detainee. Last, plaintiff asserts that "every Worksheet that a resident gets effects their treatment level in a negative way."

In claim five, ECF No. 1, pp. 8-9, plaintiff alleges that Administrative Staff at SORTS promote the idea that detainees are predatory in nature, and even though detainees are allowed to file grievances, there is a belief that detainees lie. As a result, staff at SORTS: have stolen detainees' property; verbally abused staff; fabricated Worksheets; restricted detainees' movement; physically assaulted detainees; and manipulated rules to allow for strip searches without cause. Plaintiff also claims that staff have instituted "blanket policies," which purportedly address security concerns at SORTS, but plaintiff believes these "blanket policies" allow staff to only enforce a rule against one particular resident. Plaintiff states that these practices give staff "totalitarian control" over detainees, which allows staff to: conduct room searches without cause; conduct routine pat searches without cause; conduct strip searches without cause; cause destruction

4

of detainees' physical property; reduce detainees' physical movement, such as outside time; reduce allowance of property; reduce level of exercise; and reduce access to media.

In claim six, ECF No. 1, pp. 10-11, plaintiff argues that detainees have been told they are in SORTS for "control, care and treatment"; however, SORTS takes "control" to the extreme. He claims: (1) detainees are crammed into small rooms with little property, or things to do; (2) there are wards that were originally designed for a small number of people, but currently house many over that number; (3) the wards are very dusty and have mold in the air; (4) the water pressure is poor and there is inadequate hot water; (5) the building the detainees are housed in is poor; (6) detainees are isolated on their perspective wards most of the day and are expected to stay awake, with nothing to do; (7) "detainees are not afforded access for those with disabilities or provided enough space"; (8) staff "take their time" making medical appointments for detainees; (9) detainees' "yard time" is less than Missouri prisoners'; (10) detainees' jobs/pay and responsibilities are unequal to Missouri prisoners'; (11) detainees do not have free movement inside the SORTS facility; (12) detainees are not allowed home cooked food visits; (13) detainees are not allowed the same level of library/law library as prisoners' levels; (14) detainees do not have treatment outdates; (15) there is no clear definition given to detainees of what "least restrictive environment" means; and (16) detainees in Hoctor are not afforded the level of property equal to Missouri prisoners' levels.

In claim seven, ECF No. 1, pp. 11-12, plaintiff alleges that he is a practicing Wiccan in SORTS. He claims that SORTS infringes on his rights as a Wiccan because it does not allow for the proper "natural" diet. Plaintiff also claims that SORTS have taken away his access to: (1) Akasha Spirit bags; (2) Alter cloths; (3) metal, resin or stone Altar Pentacles; (4) Amulets (5)

5

metal, magnetic or stone beads; (6) silver or brass bells; (7) Book of Shadows; (8) bracelets for ritual/spell use; (9) small broom; (10) brass, silver or iron cauldron; (11) wood, metal, resin or stone chalice; (12) charm bags; (13) clay bottles for oils; (14) cloth patches; (15) crystal ball with stand; (16) discs, DVDs, and CDs (separate from personal count); (17) face paint; (18) feathers; (19) flags/prayer flags; (20) metal, resin or stone god and goddess figures; (21) 10 packs of herbs; (22) oils for ritual use; (23) parchments; (24) pendulums; (25) pentacle/totem coins; (26) pyramid coins; (27) wood or shell rattle; (28) religious books (separate from personal books); (29) religious stickers); (30) resins; (31) ritual bowls; (32) ritual inks and quills; (33) ritual soaps; (34) runes w/ bags and cloths; (35) shells; (36) stones; (37) wood tarot box; (38) tart cards with box, bag and cloths; (39) wands; and (40) witches ladder (prayer beads).

Plaintiff claims that Wiccans are not allowed to gather on their Holy Days at SORTS, nor is there a way for Wiccans to celebrate their minor Holy Days, i.e., their Esbats. He states that SORTS is denying Wiccans from practicing their faith freely.

In claim eight, ECF No. 1, p. 12, plaintiff asserts that the detainees' diet at SORTS is unhealthy and full of carbohydrates. He claims that this type of diet will cause diabetes, and he believes it is unlawful. He also states that the food at SORTS is often cold and overcooked.

For relief in this action, plaintiff has listed seven (7) pages of injunctive and prospective declaratory relief. [ECF No. 1, pp. 13-20.] It appears he is also seeking damages in this action.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief,

6

which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113

7

(1993).

**Discussion**

Having thoroughly reviewed and liberally construed the complaint, the Court will sever and dismiss plaintiff James Moller from this action. Plaintiff Dennis Strutton will also be required to pay the $402 filing fee because he has failed to provide any financial information in support of his motion to proceed in forma pauperis. Additionally, the Court finds that the majority of Dennis Strutton's claims in his complaint have been improperly joined and are subject to dismissal. Moreover, the fictitious defendants will also be dismissed from this action. Last, plaintiff Dennis Strutton will be given twenty-one (21) days to amend his complaint on a court-provided form. His failure to do so in compliance with the Court's instructions and in a timely manner will result in a dismissal of this action, without prejudice.

**A. Plaintiff James Moller Will be Severed and Dismissed from this Action**

Plaintiffs Dennis Strutton and James Moller jointly signed the complaint in this action. This Court does not permit multiple pro se plaintiffs to join in a single lawsuit under Rule 20 of the Federal Rules of Civil Procedure. *See Georgeoff v. Barnes*, No. 2:09-CV-14-ERW, 2009 WL 1405497 (E.D. Mo. May 18, 2009). As many courts have noted there are inherent impracticalities in multiple-prisoner litigation which militate against the permissive joinder allowed by Rule 20. *See, e.g., Hagwood v. Warden*, No. 08-6010 (RBK), 2009 WL 427396, at *2 (D. N.J. Feb. 19, 2009). Among those difficulties are the need for each plaintiff to sign the pleadings, the consequent possibilities that documents may be changed as they are circulated, or that detainees or prisoners may compel authorities to permit them to gather to discuss joint litigations. *Id.* Other courts have also noted that jail or detainee populations are notably transitory, making joint litigation difficult.

And other considerations are the possibility that "coercion, subtle or not, frequently plays a role in relations between inmates." *Id.* (quoting *Swenson v. MacDonald*, No. CV 05-93-GF-CSO, 2006 WL 240233, at *4 (D. Mont. Jan. 30, 2006)). For these reasons, the Court will not allow plaintiffs to proceed jointly in this action. As a result, the Court will sever and dismiss plaintiff James Moller from this case. Nothing in this Memorandum and Order should be construed as precluding Mr. Moller from filing his own action in this Court.

This matter will proceed with named plaintiff Dennis Strutton only. Plaintiff Strutton filed a typewritten motion to proceed in forma pauperis, however, he has not included any financial information with his motion to proceed in forma pauperis. [ECF No. 2]. As a result, the Court will deny his motion and require him to pay the full $402 filing fee.

**B. The Majority of the Claims in this Action Have been Improperly Joined**

As set forth above, plaintiff Dennis Strutton has brought a multitude of claims against defendants in this lawsuit. The Court has done its best to set forth plaintiff's claims in detail under the "Complaint" section of this Opinion, Memorandum and Order.

The Court notes, however, that plaintiff's claims in Count One, which sets forth allegations of First Amendment violations, do not in any way relate to his claims in Count Two, which dispute the work level and pay of the SORTS detainees. Similarly, these two claims do not relate to plaintiff's allegations in Count Three, which sets forth plaintiff's belief that the Sexually Violent Predator Law is Unconstitutional and protests the negative viewpoint of detainees by staff. Similarly, Counts One through Three do not relate to Counts Four or Five which contests the staff at SORTS' use of the Worksheets and write ups, as well as purported due process violations at SORTS relative to detainees' loss of the ability to contest staff mistreatment. Additionally, Counts

9

One through Five do not relate to Counts Six, Seven and Eight, which, respectively, address allegations of what is a "least restrictive environment" at SORTS, religious discrimination relative to the Wiccan faith and dietary issues at SORTS.

The complaint asserts multiple unrelated claims against not one but five (5) defendants. That pleading practice is not allowed. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . .  may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Therefore, a plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences. Unrelated claims against different defendants belong in different suits.

Rule 18(a) of the Federal Rules of Civil Procedure governs joinder of claims, and provides:

> A party asserting a claim to relief as an original claim, counterclaim, cross claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

In other words, "[c]laim A against Defendant 1 should not be joined with unrelated Claim B against defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Federal Rule of Civil Procedure 21 permits severance of claims if they are improperly joined. The rule states, in pertinent part, that on motion or sua sponte, "the court may at any time, on just terms ... sever any claim against a party." Fed.R.Civ.P.21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.,* 451 F.3d 424, 442 (7th Cir. 2006) (citations

omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro,* 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted). These same considerations are frequently utilized when examining a motion to bifurcate claims under Rule 42(b). *See, e.g., Griffith v. Allstate Ins. Co.,* 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014); *Goldstein v. Am. States Ins. Co.,* No. 18-CV-3163, 2018 WL 6198463, at *1-2 (E.D. Pa. Nov. 28, 2018) (citing *Shapiro*, 190 F.R.D. at 355).

Based on the aforementioned, the Court will allow plaintiff Dennis Strutton to proceed with his first claim against defendants. In that claim, plaintiff asserts that his First Amendment rights to freedom of expression have been violated by defendants' limits on his access to speech and media. [ECF No. 1, p. 4]. Plaintiff states that this right has been violated by restricting his access to: (1) unrated DVDs; (2) videogames that are rated E/E10 (and no shooter games); (3) music that does not have "Explicit" or "Adult" ratings; (4) the internet or social media; and (5) an inability to learn or speak a language other than English. Plaintiff will be required to amend his complaint on a court-provided form, *on this claim only*, to indicate with particularity, which defendant or defendants have violated his rights with respect to this claim. The Court will provide instructions for amending his complaint below.

Plaintiff Strutton's remaining claims in his complaint will be dismissed from this action for improper joinder.

## B. Plaintiff's Claims Against the John Doe Defendants

In the caption of the complaint, plaintiff Dennis Strutton names as a defendant: "Several Does of the Sex Offender Rehabilitation and Treatment Services Facility." Plaintiff, however, has not identified these defendants in any manner, nor has he made specific allegations against these defendants.

To the extent that this statement implies that plaintiff seeks to include unknown and later-named John Doe defendants in this matter, this is impermissible. Such defendants are both unidentified and indeterminate in number, and he lacks specific allegations against such defendants. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible). In addition, the complaint contains no details about how these possible defendants contributed to the constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution"). Therefore, to the extent plaintiff Dennis Strutton can be understood as attempting to name additional fictitious parties as defendants, the complaint is legally frivolous and/or fails to state a claim upon which relief can be granted as to these additional fictitious defendants. They will be dismissed from this lawsuit.

## C. Official Capacity Claims

### 1. Official Capacity Claims for Damages

Plaintiff's official capacity claims for damages against defendants, with respect to his First Amendment claim,[6] fails to state a claim. An official capacity suit is a "way of pleading an action

---

[6] Because the Court is severing and dismissing his other claims in this lawsuit, the Court need not dismiss

12

against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, an official capacity claim against an individual is actually a claim "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("a "suit against a public employee in his or her official capacity is merely a suit against the public employer"); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Thus, to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

In this case, defendants are employed by the Missouri Department of Mental Health. In an official capacity claim for damages against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person

---

the official capacity claims with respect to Counts Two through Eight.

under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment bars claims fo damages against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Here, defendants are all employees of the Missouri Department of Mental Health, a state agency. For the reasons discussed above, plaintiff's official capacity claims for damages against them are really claims against their employer. Thus, plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity. Thus, the official capacity claims against defendants in this lawsuit are subject to dismissal.

**2.  Official Capacity Claims for Prospective Injunctive Relief**

The Eleventh Amendment "protects States and their arms and instrumentalities from suit in federal court." *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018). There is an exception to this immunity, however, providing that "a private party may sue state officials in their official capacities for prospective injunctive relief." *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018). To determine whether this exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* A suit for injunctive or declaratory relief avoids Eleventh Amendment immunity as long as "the official has some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). *See also Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (explaining that a "State's Eleventh Amendment immunity does not bar a suit against a state

14

official to enjoin enforcement of an allegedly unconstitutional statute, provided that such officer has some connection with the enforcement of the act"). "Absent that connection, the officer is merely a representative of the state, and Eleventh Amendment immunity applies." *Duit Const. Co. Inc. v. Bennett*, 796 F.3d 938, 940 (8th Cir. 2015). For the required connection to exist, the named defendant or defendants must possess the authority to enforce the complained-of provision. *See Calzone,* 866 F.3d at 869. *See also Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957-58 (8th Cir. 2015) ("When a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision"). "[A] state official's requisite connection with the enforcement of a statute may arise out of the general law or be specially created by the act itself." *Calzone*, 866 F.3d at 870.

At this point in the case, plaintiff has not properly alleged who is responsible for the challenged policy regarding the rules at SORTS setting forth the alleged First Amendment restrictions, as detailed in Count One in his complaint. He will be allowed to amend his complaint to set forth his claim for prospective injunctive relief if he wishes to do so. However, at this juncture, his claims for prospective injunctive relief fail to survive § 1915 review.

**D. Instructions for Amending the Complaint**

As set forth above, plaintiff Dennis Strutton will be allowed to file an amended complaint, on a court-provided form, setting forth the claims in Count One of his complaint, regarding his First Amendment claim relating to defendants' purported limits on his access to speech and media. [ECF No. 1, p. 4]. In his complaint, plaintiff states that this right has been violated by restricting his access to: (1) unrated DVDs; (2) videogames that are rated E/E10 (and no shooter games); (3)

15

music that does not have "Explicit" or "Adult" ratings; (4) the internet or social media; and (5) an inability to learn or speak a language other than English. Thus, these assertions will set the parameters for his amended complaint.

Plaintiff is warned that the filing of an amended complaint completely replaces the original complaint so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must type or neatly print the amended complaint on the Court-provided prisoner civil rights complaint form, which will be provided to him. *See* E.D. Mo. L.R. 45 – 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms").

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). All the defendants must be clearly listed. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his First Amendment claim.

In the "Statement of Claim" section, plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, plaintiff should: (1) set forth a short and plain statement of the factual allegations supporting his claim against that specific defendant; and (2) state what constitutional or federal statutory right(s) that defendant violated. Each averment must be simple, concise, and direct. *See* Fed. R. Civ. P. 8(a). If plaintiff is suing more than one

16

defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. No introductory or conclusory paragraphs are necessary.

The Court cannot emphasize this enough. Plaintiff's failure to make specific factual allegations against each and every defendant will result in that defendant's dismissal from the amended complaint and ultimately from this action. Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim."). Plaintiff must not amend a complaint by filing separate documents. Instead, he must file a single, comprehensive pleading that sets forth his claims for relief.

Plaintiff must also be careful to fill out the Court-provided complaint form in its entirety, including the "Injuries" and "Relief" sections. There is no constitutional violation where an inmate cannot show he suffered an injury or adverse health consequence. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995). "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment

17

violation." *White v. Holmes*, 21 F.3d 277, 281 (8th Cir. 1994).

If plaintiff fails to file an amended complaint on a Court-provided form within twenty-one (21) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to plaintiff. Additionally, plaintiff is also responsible for paying the $402 full filing fee within twenty-one days of this Opinion, Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that in accordance with Federal Rule of Civil Procedure 21, plaintiff James Moller will be **SEVERED and DISMISSED** from this action.

**IT IS FURTHER ORDERED** that plaintiff Dennis Strutton's motion to proceed in forma pauperis [ECF No. 2] is **DENIED** due to plaintiff's failure to provide financial information.

**IT IS FURTHER ORDERED** that **within twenty-one (21) days of the date of this Order, plaintiff Dennis Strutton shall pay the $402 filing fee.** Plaintiff's failure to pay the filing fee will result in a dismissal of this action.

**IT IS FURTHER ORDERED** that plaintiff Dennis Strutton's motion for class certification [ECF No. 3] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff Dennis Strutton a blank Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **twenty-one (21) days of the date of this Opinion, Memorandum and Order**, plaintiff Dennis Strutton shall submit an amended complaint, on a Court-provided form, in accordance with the instructions set forth herein.

**IT IS FURTHER ORDERED** that defendants, known as "Several Does of the Sex Offender Rehabilitation and Treatment Services Facility," are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff Dennis Strutton's official capacity claims against defendants are **DISMISSED at this time**.

**IT IS FURTHER ORDERED** that if plaintiff Dennis Strutton fails to timely comply with this Opinion, Memorandum and Order, the Court will dismiss this action without prejudice and without further notice.

A separate Order of Partial Dismissal shall accompany this Opinion, Memorandum and Order.

Dated this 10th day of January, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE