**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DENNIS STRUTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-CV-01134-SPM |
| | ) | |
| DENISE HACKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on six motions: Defendant George Killian's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 24); Defendant Denise Hacker's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 31); Plaintiff's Motion for Judicial Notice (ECF No. 35), Plaintiff's Motion for Summary Judgment/Response to Motion to Dismiss (ECF No. 36), Plaintiff's Motion for Appointment of Counsel (ECF No. 38), and Plaintiff's Motion for His First Request for Documents (ECF No. 39). The motions have been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 34). For the following reasons, Defendants' motions to dismiss will be granted with respect to Plaintiff's individual capacity claims and denied with respect to Plaintiffs' official capacity claims. Each of Plaintiff's motions will be denied except to the limited extent set forth below.

1

## I.   FACTUAL BACKGROUND[1]

Plaintiff Dennis Strutton, who is self-represented, has been a civilly committed resident of the Sex Offender Rehabilitation and Treatment Services Center ("SORTS") since 2002.[2] Although Plaintiff has never misused the internet, he has been completely denied access to the internet during the entire time he has been in the SORTS facility. As a result, his ability to research current events is diminished; his thinking is altered because he is isolated from the world and has very little information on which to make decisions; he is not allowed to order his own items and is forced to rely on others; he is pulled backwards as he is behind the technology era; he is restricted from sharing ideas, thoughts, and other forms of expression; he is restricted from accessing information that will benefit his personal growth and treatment; he has suffered lasting damage to his treatment; and his education level is limited.

Plaintiff brings this action under 42 U.S.C. § 1983 against Defendants Denise Hacker (Chief Operations Officer for SORTS) and George Killian (Director of Treatment Services for SORTS), in their individual and official capacities. He alleges that Ms. Hacker and Mr. Killian have failed to provide him with any resources to allow him access to the internet and have refused to allow Plaintiff access to the internet every time he has tried to obtain access, thereby violating his rights under the First Amendment. Plaintiff asks the Court to (1) provide all individual SORTS residents access to the internet; (2) allow all SORTS residents who have no internet-related offenses to have unlimited access to the internet and social media; (3) provide Plaintiff with a

---

[1] These facts are taken from Plaintiff's Second Amended Complaint. (ECF No. 12).

[2] Under Missouri law, a person who is determined to be a "sexually violent predator" shall be "committed to the custody of the director of the department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large." Mo. Rev. Stat. § 632.495.2.

personal laptop equal to all those in SORTS; and (4) allow Plaintiff a subscription to the Great Courses, at the State's expense, for the duration of his stay in SORTS.

On initial review pursuant to 28 U.S.C. § 1915, the Court found that to the extent Plaintiff intended to assert claims on behalf of other civil detainees, those claims must be stricken for lack of standing. Mem. & Order, ECF No. 13 (May 2, 2024). However, the Court found Plaintiff had stated a plausible claim for relief under the First Amendment against Defendants in their individual capacities and official capacities. *Id.*

Defendants now, in separate but substantively identical motions, move to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, but it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019).

A complaint filed by a self-represented plaintiff should be "liberally construed" and "held

to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quotation marks omitted).

**III.    DISCUSSION**

**A.    Defendants' Motions to Dismiss**

*1.    Official Capacity Claims*

Defendants argue that Plaintiff's official capacity claims should be dismissed because Plaintiff is a sexually violent predator and the restrictions on Plaintiff's First Amendment right to internet usage are necessary to advance a legitimate reformative purpose of the State. After review, the Court finds Plaintiff has alleged sufficient facts to state a claim at this stage of the proceedings.

"The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought, and freedom to teach[.]" *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) (citations omitted). Restrictions on the use of the internet may infringe on an individual's First Amendment rights. *See Packingham v. North Carolina,* 582 U.S. 98, 104-08 (2017) (holding that state statute prohibiting sex offenders from accessing social networking websites violated the First Amendment); *Reno v. Am. Civ. Liberties Union,* 521 U.S. 844, 849 (1997) (holding that statutory provisions enacted to protect minors from indecent and patently offensive communications on the internet violated the First Amendment, notwithstanding the legitimacy and importance of the congressional goal of protecting children from harmful materials).

In the prison context, the Supreme Court has held that "when a prison regulation impinges

on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a regulation is reasonably related to a legitimate penological purpose, courts consider the following factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right remain open to prison inmates; (3) whether alternative means of exercising their rights remain open to the prisoners; (3) the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is a ready alternative to the regulation that would fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Id.* at 89-91. The Eighth Circuit has recognized that "a *Turner* analysis is a fact-intensive inquiry requiring careful examination of the policies and institutions at issue in each case." *Simpson v. Cnty. of Cape Girardeau, Missouri,* 879 F.3d 273, 282 (8th Cir. 2018).

As Plaintiff points out, he is a not a prisoner, but a civil detainee. Although the Court has found no Eighth Circuit cases addressing the issue, several other courts have applied *Turner* to civil detainees. Those courts typically modify the *Turner* analysis to reflect the fact that the government's legitimate interests are different for civil detainees and do not include punishment. *See, e.g. Matherly v. Andrews*, 859 F.3d 264, 282 (4th Cir. 2017) (holding that a modified version of *Turner* applies to civil detainees that requires assessment of whether the regulation is "reasonably related to legitimate nonpunitive governmental interests"); *Pesci v. Budz*, 730 F.3d 1291, 1298 (11th Cir. 2013) ("[T]he government undoubtedly may justify a civil detention regulation based on its valid, rational connection to legitimate interests in institutional order, safety, and security and in the rehabilitation and treatment of civil detainees, but it may not justify

a restraint on detainees' constitutional rights for reasons related to punitive conditions of confinement."); *Daywitt v. Harpstead*, No. 20-CV-1743 (NEB/ECW), 2023 WL 6366610, at *4 (D. Minn. Sept. 29, 2023) (noting that "as far as the Court is aware, every circuit to address the constitutional validity of a civil commitment program policy has identified *Turner* as the appropriate standard"; modifying the *Turner* analysis to assess the government's legitimate nonpunitive interests, including its "legitimate institutional and therapeutic interests"), *aff'd*, No. 24-1138, 2024 WL 4234951 (8th Cir. Sept. 19, 2024). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012) (applying *Turner* to civil detainees by agreement of the parties). The Court agrees with this approach and finds that a modified version of *Turner* applies in this case. The regulation at issue is valid if, after application of the *Turner* factors, the Court can find that it is reasonably related to the government's legitimate nonpunitive interests, including its legitimate institutional and therapeutic interests.

The parties have not cited, and the Court has not found, any binding caselaw addressing whether, or under what circumstances, a complete restriction on a civil detainee's right to access the internet violates the First Amendment. The Court finds instructive *Ivey v. Johnston*, in which the court found that allegations similar to those in this case stated a claim under the First Amendment and survived a challenge under Rule 12(b)(6). No. 18-CV-1429 (PAM/DTS), 2019 WL 3334346, at *6 (D. Minn. July 24, 2019), *report and recommendation adopted*, No. CV 18-1429 (PAM/DTS), 2019 WL 3987583 (D. Minn. Aug. 23, 2019). In *Ivey*, civilly committed residents of the Minnesota Sex Offender Program ("MSOP") alleged that the MSOP's complete ban on internet use violated their First Amendment rights. *Id.* at *1. The defendant moved to dismiss the claim under Rule 12(b)(6). *Id.* The court noted that "[t]here has never been serious doubt that the First Amendment extends to speech distributed via the internet" and found that the

plaintiffs had alleged sufficient facts to show that a government actor deprived them of their right to speech distributed over the internet by alleging that the defendant prohibited all access to the internet. *Id.* at *4. It noted that the modified *Turner* framework applied to claims brought by civil detainees and stated:

> Under this analytical framework, if a plaintiff's complaint states a cognizable First Amendment claim, it generally survives a motion to dismiss despite the plaintiff's civil commitment status. Applying *Turner* and determining the extent of First Amendment rights in the civil commitment context, like its penological counterpart, "is a fact-intensive universe." *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012). An individual plaintiff's therapy needs may be highly relevant to determining whether a policy reasonably relates to a legitimate interest. As such, courts considering a motion to dismiss an involuntarily committed individual's constitutional claim under Rule 12(b)(6) limit their inquiry to whether the Complaint states a cognizable constitutional claim and leave the *Turner* question to be determined upon a properly developed factual record. See *Stone v. Jesson*, Civ. No. 11-0951 (WMW/HB), 2017 WL 1050393, at *4 (D. Minn. Mar. 17, 2017); *Pittman v. Jesson*, Civ. No. 12-1410 (SRN/TNL), 2014 WL 4954286, at *16 (D. Minn. Sept. 30, 2014) (citing *Karsjens* [*v. Jesson*, 6 F. Supp. 3d 916,] 937). At least one court has conducted the modified *Turner* analysis on a Rule 12(b)(6) motion. But the court there made it very clear that the plaintiffs had made sufficient allegations and attached enough material to the complaint that the court could consider the *Turner* factors on the pleadings. *Semler v. Ludeman*, Civ. No. 09-0732 (ADM/SRN), 2010 WL 145275, at **16 n. 8, 21 n. 9 (D. Minn. Jan. 8, 2010). As noted above, Plaintiffs here have stated a cognizable First Amendment claim and there is not a sufficient record at this stage for the Court to conclude that a wholesale restriction on internet access is sufficiently supported by institutional and therapeutic concerns.

*Id.* at *6. The court found that the motion to dismiss should be denied and did not conduct an analysis of the *Turner* factors, leaving that for a future determination. *Id.* It distinguished another district court case considering a challenge to MSOP's internet ban because that case had been decided at the summary judgment stage and the court had upheld the constitutionality of the ban "only after reviewing the evidence, including affidavits, submitted by both parties." *Id.*

Other courts have also declined to dismiss civil detainees' First Amendment claims at the pleadings stage, noting the difficulty of conducting a full *Turner* analysis without a more

developed record. *See Daywitt v. Harpstead,* No. 20-CV-1743 (NEB/KMM), 2021 WL 2210521, at *3 & n. 7 (D. Minn. June 1, 2021) (denying a motion to dismiss a civilly committed individual's First Amendment claim "because Plaintiffs adequately plead allegations that would allow them to prevail under the modified *Turner* analysis, and because the modified *Turner* analysis is fact-specific and ill-suited to deciding a claim on a motion to dismiss"; distinguishing cases finding no constitutional violation based on similar facts at the summary judgment stage); *Jannetta v. Minnesota Dep't of Hum. Servs.*, No. 19-CV-2622 (ECT/TNL), 2020 WL 3405430, at *7 (D. Minn. June 1, 2020) (recommending against dismissal of a civilly committed individuals' First Amendment challenge to a policy restricting clients' access to media where "the modified *Turner* analysis in this matter is not so obvious from the face of the pleading alone that this Court can conclude that plaintiffs' First Amendment claim is not viable"; stating, "[a] more-developed record is necessary to review properly plaintiffs' First Amendment claim under the modified *Turner* approach"), *report and recommendation adopted*, No. 19-CV-2622 (ECT/TNL), 2020 WL 3402418 (D. Minn. June 19, 2020); *Stone v. Jesson*, No. 11-CV-0951 (WMW/HB), 2017 WL 1050393, at *4 (D. Minn. Mar. 17, 2017) (denying motion to dismiss civilly committed individual's claim that policy violated his First Amendment right to receive and consume media; rejecting Defendants' reliance on a case that had been decided on summary judgment and noting that "because this case is before the Court on Defendants' motion to dismiss, there is no record on which to conduct a *Turner* analysis").

As in the cases discussed above, the Court finds that dismissal at the pleadings stage here is inappropriate because Plaintiff has pleaded a cognizable First Amendment claim and because it is not obvious from the face of the complaint that Plaintiff's claim is not viable under the modified *Turner* analysis. As discussed above, there is little doubt that a complete restriction on the use of

the internet impinges on Plaintiff's First Amendment rights. As to the first modified *Turner* factor, although the Court acknowledges Defendants' argument that there appears to be a valid connection between a restriction on the internet and SORTS's legitimate interest in reforming Plaintiff as a sexually violent predator given the widespread sexual content available on the internet, Plaintiff has alleged that the total ban on all internet use has damaged his treatment by restricting him from accessing information that will benefit his personal growth. At least one court has held that similar allegations weighed in favor of the plaintiff in assessing the first factor. *See Daywitt v. Harpstead*, No. 20-CV-1743 (NEB/KMM), 2021 WL 2210521, at *3 (D. Minn. June 1, 2021) (noting that allegations that "the challenged policies have a counter-therapeutic effect," if proven true, would favor the plaintiffs as to the first *Turner* factor). Plaintiff has also alleged that he has never misused the internet, which may further support a lack of connection between the institution's therapeutic interests and a complete ban on Plaintiff's internet use. As to the remaining *Turner* factors, the Court cannot determine from the face of the complaint whether Plaintiff has alternative means of exercising his First Amendment rights, what impact accommodating Plaintiff's right would have on other civil detainees or the institution, or whether there is a readily alternative to the complete ban that could be accomplished at a *de minimis* cost to the institutions' legitimate interests. Plaintiff's allegations provide little information regarding these factors, but they certainly do not show that these factors favor Defendants. Defendants argue that the relief Plaintiff requests would require SORTS to invest large amounts of human capital into policing internet activity, that the effect would compound as numerous other detainees would gain such rights, and that the SORTS facility currently does not have the monetary and human capital required to successfully police that internet usage. But those arguments depend on facts not in the record and cannot be evaluated at this stage of the litigation.

9

For all of the above reasons, Defendants' motion to dismiss Plaintiffs' official capacity claims will be denied.

### 2. *Individual Capacity Claims*

Defendants argue that the individual capacity claims against them should be dismissed because Plaintiff seeks only injunctive relief and because suits under § 1983 for injunctive relief cannot be brought against individuals. The Court agrees that Plaintiff seeks only injunctive relief, not damages. Although the Court has found no Eighth Circuit cases addressing the issue of whether the plaintiff in a § 1983 case can obtain injunctive relief from a defendant in his or her individual capacity, cases from other courts support Defendants' argument. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Ctys.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity."); *Ballard v. Reitz,* No. 4:23-CV-01050-MTS, 2024 WL 180857, at *2 (E.D. Mo. Jan. 17, 2024) (dismissing a civil detainee's individual capacity claims for injunctive relief against SORTS official where the plaintiff sought an order requiring the defendant to take certain actions to accommodate his religious free exercise; stating, "Neither the facts Plaintiff pleads nor the relief Plaintiff requests implicates [the defendant] in his individual capacity"; allowing official capacity claim to remain); *Bird v. Mertens-Jones*, No. 4:21-

CV-04197-KES, 2023 WL 1785572, at *8 (D.S.D. Feb. 6, 2023) ("The injunctive relief [the plaintiff] is seeking—enjoining the implementation of allegedly unlawful decisions and policies at the prison—concerns authority that the defendants have only in their official capacities. Thus, 'the only relief [the plaintiff] can obtain from these defendants in their individual capacities is damages,' and not injunctive relief.") (quoting *Hummel v. Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 593 (D. Minn. 2020)); *Mullen v. City of St. Louis*, No. 4:20 CV 862 CDP, 2021 WL 5865374, at *2 (E.D. Mo. Dec. 10, 2021) (dismissing § 1983 claims against officers because the plaintiff sought only injunctive relief and sued them only in their individual capacities). *Cf. Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 959 (D. Minn. 2011) (allowing § 1983 claims for prospective injunctive relief against defendants in their individual capacities to proceed because the case was "unique" in that the defendants' actions were taken "both within and outside the scope of their official duties").

Here, as in the above cases in which individual-capacity claims seeking injunctive relief were dismissed, Plaintiff's allegations concern only actions taken within the scope of Defendants' official duties, and the relief sought relates only to Defendants' official duties. Thus, the Court will grant Defendants' motions to dismiss the claims against them in their individual capacities for failure to state a claim.

### B. Plaintiff's Motions

Plaintiff has filed four motions; the Court will address each in turn.

#### 1. Motion for Judicial Notice

In his Motion for Judicial Notice, Plaintiff asks the Court to take judicial notice of several alleged facts: that Plaintiff received legal mail from Defendant Hacker on July 17, 2024; that Hacker's response and motion to dismiss were filed 51 days past the 21 day deadline that was

established by the Court, that Plaintiff used a word processor to file a motion for summary judgment and response to Plaintiff's motion to dismiss; that on July 25, 2024, Plaintiff requested to have items printed for this case; that SORTS staff stifled Plaintiff by having him wait and ask the ward clerks to print the pleading on July 29, 2024; that Plaintiff filed a ward clerk paper on July 30, 2024; and that Plaintiff's time for response was July 24, 2024. Plaintiff requests that the Court will "accept the judicial notice and allow [him] to prevail." ECF No. 35, at 2. The same day he filed this motion, Plaintiff also filed a "Motion Summary Judgment/Response to Motion to Dismiss." ECF No. 36.

To the extent that Plaintiff asks the Court to take judicial notice of these facts, the motion is denied. "Under Federal Rule of Evidence 201(b), a court may take judicial notice of a 'fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017) (quoting Fed. R. Evid. 201(b)). The facts set forth in the motion do not meet this standard. To the extent Plaintiff asks the Court to allow him to "prevail" on this action generally, the motion is also denied. However, to the extent that Plaintiff seeks leave to file his response to Defendant Hacker's motion to dismiss out of time, based on his statements indicating that facility staff made it difficult for him to timely review the motion and file a response, the motion is granted.

## 2. *Motion for Summary Judgment/Response to Motion to Dismiss*

In his Motion for Summary Judgment/Response to Motion to Dismiss, Plaintiff submits a list of facts and legal arguments that appear to constitute both his response to Defendant Hacker's motion to dismiss and a request that the Court grant summary judgment in his favor. To the extent that this is a response to Defendant Hacker's motion to dismiss, the Court has considered it in

ruling on the motion to dismiss. To the extent that Plaintiff is moving for summary judgment, the motion is denied because it does not comply with either the Federal Rules of Civil Procedure or this Court's local rules. *See* Fed. R. Civ. P. 56(a), (c) (requiring a movant seeking summary judgment to show that there is no genuine dispute as to any material fact and setting forth procedures for supporting factual positions, including citing to particular materials in the record); E.D. Mo. L.R. 4.01(A) (requiring a party filing a motion to file with the motion a memorandum in support of the motion and any documentary evidence relied on); E.D. Mo. L.R. 4.01(E) (requiring a memorandum filed in support of a motion for summary judgment to be accompanied by a document titled Statement of Uncontroverted Material Facts that sets forth each relevant fact in a separately numbered paragraph stating how each fact is established by the record, with appropriate supporting citations).

In the alternative, Plaintiff asks that if the Court does not grant summary judgment against Defendant Hacker, the Court order Defendant Hacker to meet with Plaintiff, cause this case to proceed, deny Defendant Hacker any form of immunity and hold him responsible for the violation of Plaintiff's constitutional rights, and affirm that Plaintiff is not a prisoner and is not in SORTS to be punished. These requests will be denied because they are unsupported by any authority and/or are moot in light of this Court's ruling on the motion to dismiss, which states that Plaintiff is not a prisoner and which will allow this case to proceed.

### 3. *Motion to Appoint Counsel*

In his Motion to Appoint Counsel, Plaintiff asks the Court to appoint counsel for him because he is not a lawyer and does not know all the requirements he needs to follow, because he is engaged in treatment for his sex offenses and has little time or resources to work on this lawsuit, and because justice would be served if he had counsel. The motion will be denied without

prejudice. There is no constitutional or statutory right to appointed counsel in civil cases. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). In deciding whether to appoint counsel, the court considers relevant factors such as the complexity of the facts and legal arguments, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail,* 437 F.3d 791, 794 (8th Cir. 2006).

After considering these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will therefore deny the motion for appointment of counsel without prejudice.

In the alternative, Plaintiff asks that if the Court deny his request for counsel, the Court order SORTS staff to assist Plaintiff in several specific ways. Because the Court is unaware of any legal authority that would permit it to grant the requested relief, this request will be denied.

### 4. Motion for His First Request of Documents

In Plaintiff's Motion for His First Request of Documents, Plaintiff requests copies of various SORTS documents that may be relevant to his lawsuit, such as policies and procedures, certain emails, and committee meeting minutes. This appears to be a request for production of documents under Fed. R. Civ. P. 34(a) that should be directed to Defendants and not filed with the Court. *See* E.D. Mo. L.R. 3.02(A). ("[D]iscovery and disclosure materials pursuant to Fed. R. Civ. P. 26, 30, 31, 33, 34, 35, and 36 . . . shall not be filed with the Court except as exhibits to a motion

or memorandum."). Because this motion does not seek any relief from the Court, it will be denied.

IV.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant George Killian's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 24) is **GRANTED IN PART AND DENIED IN PART**. With respect to Plaintiff's individual capacity claim, the motion is **GRANTED**. With respect to Plaintiff's official capacity claim, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Denise Hacker's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 31) is **GRANTED IN PART AND DENIED IN PART**. With respect to Plaintiff's individual capacity claim, the motion is **GRANTED**. With respect to Plaintiff's official capacity claim, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judicial Notice (ECF No. 35) is **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff seeks leave to file his response to Defendant Hacker's motion to dismiss out of time, the motion is **GRANTED**. In all other respects, the motion is **DENIED**.

**IT IS FURTHER ORDRED** that Plaintiff's Motion for Summary Judgment/Response to Motion to Dismiss (ECF No. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 38) is **DENIED**, without prejudice to refiling at a later time.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for His First Request for Documents (ECF No. 39) is **DENIED**.

The Court will enter a separate Case Management Order.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of January, 2025.